Judge Owsley
delivered the Opinion of the Court.
On the 28th of January, 1799, Davison executed to Daniel Haddix a deed of conveyance for a tract of land, described to contain one hundred acres be the same more or less, and which purports to have been made in consideration of one hundred and twenty pounds paid by Haddix.
The deed contains a specification of the boundary of the tract, and contains a warranty against all others claiming the land,
Bill by Hadflix’s heirs.
Answer of Davison.
Decree of the circuit court.
Equity will not decree an obligor to convey land to which he has no claim,compensation is the only remedy.
The chancellor governs himself generally by the statutes, of limitations— But,
Haddix received the possession of the land, and he, and those claiming under him, have remained possessed ever since.
In 1821, Haddix having departed this life, his heirs, after obtaining permission from his administrators, exhibited their bill in equity against Davison, in which they charge that the deed was made in pursuance of a contract made by their ancestor to purchase of Davison one hundred acres of laud, and that the obligation which was given by Davison for a title was restored to him by their ancestor when the deed was executed; but that instead of comprehending one hundred acres, the quantity purchased, the deed only contains fifty acres. They pray that Davison may be compelled to convey the balance of the purchase, if he has title to enable him to do so, and if not, that he be decreed to make compensation for the deficiency of quantity not contained in the deed, See.
The answer of Davison admits the conveyance made by him, but alleges it to have been made, not in pursuance of a contract per acre, for any specific quantity, but for the tract in gross as described in the deed. He denies the jurisdiction of a court of chancery, and insists upon the lapse of time in bar of relief &c.
The court upon a final hearing, pronounced a decree dismissing the complainants bill.
There is evidently nothing in the record which can authorize a decree in favour of the heirs of Haddix for a conveyance from Davison for an additional quantity of land. Were it even admitted that one hundred acres of land was in fact sold by Davison to the ancestor of the appellants, and that no other objection existed against their right to relief, the circumstance of Davison hot appearing to have any other land adjoining the tract conveyed to their ancestor would in itself form an insuperable bar to a court of equity decreeing a conveyance.
The right of the heirs to relief, if any they have, must, therefore, be for compensation for the deficiency in the quantity of acres alleged to have been purchased by their ancestor from Davison, and not contained in the deed of conveyance. But we are *41 sjoi of opinion that, under the cimunstances contained in the record, any right to compensation is shewn to exist. If through the fraud ot Davison the ancestor of the heirs was induced to accept the deed, under the erroneous opinion that it contained one hundred acres, the right to indemnity must have been cofemporaneous with the execution of the deed and the lapse of time which has since intervened, would preclude a court of equity from interposing its aid. Though suits in chancery are not mentioned in the statute of limitations, courts of equity have at all times been governed by its provisions, so as to refuse their aid to such as have slept upon their right the length of time prescribed by the statute as a bar to actions at law.
Time tobui t, a ¿¿Hin cases toon hcld'not to commence till the fraud e'JfLother-01 ^ise at lav-
when the bar or limitation commences,^ run^notwithstanding the demise of the party and the right cast on infants &c.—
*41 in adopting the statute, courts of equity are, however, guided by analogy to actions at law, and admit no case to be controled by the lapse of time where the complainant brings himself withiu any of the savings of the statute. Having in view the justice of the case, and proceeding upon principles more liberal than those which control actions at law, courts of equity have in some instances ret'ie-ed to give any effect to the running of time in cases of fraud until after the fraud is discovered by the complainant, though, according to the letter of the statute, in actions at law for the fraud, the limitation of time commences running immediately upon the commission of the fraud, notwithstanding it be not discovered by the plaintiff until the time of limitation has actually elapsed.
But in the present case there is nothing calculated to prevent the operation of the lapse of time upon the claim of the heirs of Haddix. It is not even alleged that either the. deficiency of quantity of land in the tract assigned by Davison to their ancestor, or the fraud committed by him in making the conveyance has been discovered so recently as to avoid the lapse of time.
Nor have the heirs brought their rase within any exception contained in the statute. They have, it is true, proved that, at the time of their ancestor’s death, they were infants of tender years, and that they had not arrived at full age before the com *42 menccment of their suit. But according to the statements contained in their bill, their right, to relief, if any they had, must hate accrued to their ancestor in his lifetime, and of course the limitation of time must have commenced running against him, and having commenced running in his lifetime, it must necessarily have continued to run after his death, notwithstanding the subsequent disability of the heirs,
Except — •
In (he limitation of the right of entry, ivhere if the right he cast on all under disability there will he a cessation.
Claim of bargainee for compensation for a fraudulent misropre sentation of the quantity, passes to to his Executor, not the heirs, and tho’ they be all infants and he yield (he claim to them, thelimitation still sans.
U ickliffe for appellants.
In its application to cases coming within the influence of that section of the general statute oflimitations which relates to rights of entry to land, the rule is otherwise. Though in cases of that sort the limitation of time may have commenced running in the life time of the ancestor, it will not continue to run against his heirs, if at. the time the right, descends upon them, the whole of the heirs labor under any of the disabilities mentioned in the statute.
But as we have before remarked, the right of the complainants, if any they ever had, is of a pecuniary nature, and the doctrine is well settled that no subsequent disability can prevent the running of the statute in such a case after it has begun to run. Rut again, the claim of the complainants being for compensation, it must necessarily, upon the death of their ancestor, have vested in bis personal representatives, and of course no disability of the heirs can prevent the operation of time as to them. True, it appears from the record, that the personal representatives have yielded up their right to (he heirs, but their having done so cannot prevent the operation of the bar produced by the lapse of time. The heirs can occupy no more favorable ground than would the personal representatives were they complainants, and as the personal representatives would have been barred by the lapse of time, the effect must be the same against the heirs.
It was. therefore, correct to dismiss the bill of the complainants.
The decree must consequently be affirmed with, cost.